THE STATE OF OHIO, APPELLEE, v. BRADLEY, APPELLANT.

[Cite as State v. Bradley, 3 Ohio St. 2d 38.]

(No. 39001—Decided June 30, 1965.)

*Mr. John T. Corrigan*, prosecuting attorney, *Mr. John T. Patton* and *Mr. Leo Spellacy*, for appellee.

*Messrs. Starkoff, Yelsky & Eisin, Mr. Leonard Yelsky* and *Mr. Charles V. Carr*, for appellant.

SCHNEIDER, J. The principle governing our disposition of this appeal is that the trial judge had the occasion, which is given neither to us nor to the Court of Appeals, to gauge the totality of the impact upon the jury of the spectator's demonstration. Was the jury disturbed, alarmed, shocked, or deeply moved? Was the incident of such a nature as to have necessarily influenced the verdict of conviction? These questions necessarily depend on facts which no record can reflect.

Without more appearing in the record than is shown here, only the trial judge can authoritatively determine the answers. That he was justified in concluding that the defendant suffered no prejudice amply appears from his admonition to the jury:

"Now, ladies and gentlemen of the jury, you have already been instructed not to let sympathy, bias or prejudice enter into your consideration of the guilt or innocence of this defendant. About the time Mr. Spellacy concluded his final argument you witnessed an emotional outburst on the part of a spectator seated in the back of the courtroom. This outburst obviously came from someone who had great affection for the deceased. The court is positive that this outburst came unexpectedly and is certain that counsel on both sides of the table neither knew that this was going to happen or had anything to do with this event. You are instructed to totally disregard what you heard or saw this morning in the courtroom and decide this case only on the basis of the evidence adduced during the course of this trial."

The foregoing was contained in the general charge which followed immediately the recess during which the trial judge discussed the incident with counsel, learned for the first time himself that the spectator was the widow of the deceased, and denied the motion for mistrial. He might well have concluded that the effect of the demonstration upon the jurors was as likely as not "to have stirred up their indignation, and not to have gained support for * * * [the widow's] views."[1] If so, this result could have been turned completely around to sympathy *for* her by a reprimand which defendant claims ought to have been administered to her.

These considerations depend upon factual matters properly

[1] Bevis, J., in *Emmert* v. *State*, 127 Ohio St. 235, at page 246.

reposing within the sound determination of the trial judge and his findings thereon will not be disturbed on review in the absence of evidence on the face of the record clearly and affirmatively showing that the jury was improperly affected thereby to the defendant's prejudice. See *Lash* v. *United States*, 221 F. 2d 237 (juror questioned by court in presence of jury after his wife was observed talking with defendant's wife); *State* v. *Bolle* (Mo.), 201 S. W. 2d 158 (spectator stated in court in course of motor vehicle manslaughter trial that his daughter was killed at the same place); *State* v. *Franklin*, 167 Kan. 706, 208 P. 2d 195 (mother of victim of homicide arose in course of trial and screamed repeatedly, "he killed my son"); *Hanye* v. *State*, 211 Ala. 555, 101 So. 108 (weeping demonstration by widow of victim of homicide); and *State* v. *Wimby*, 119 La. 139, 43 So. 984 (expressions of grief by mother of victim of homicide).

In none of the foregoing cases was the incident mentioned found to be prejudicial to the rights of the defendant at the trial, nor was that finding reversed on review.

Similarly is the trial judge positioned to observe the demeanor, attention, attitude and maturity with which the jurors approached their task. The record in this case supports the conclusion that the gift to the prosecutors, however frivolous and infantile in itself, was not indicative of the jury trifling with its duty or forgetting the "sanctity of the province in which * * * [it] is appointed to act.'"[2]

Several of the jurors testified at the hearing for a motion for a new trial. None related any part of their deliberations on the issues of the case. It would have been improper to have inquired of this. *State* v. *Adams*, 141 Ohio St. 423.

The first mention of the sponge or a gift among the jurors occurred on the second to last day of trial when one said "we [the jury] ought to give them [the prosecution] a sponge when this is all over." On the final day, a lady juror announced that she had the sponge but that "they had better think it over before giving it." No other discussion of it took place before the verdict was announced. The card was signed by all the jurors after sentence of the defendant and the discharge of the jury.

---

[2]Corwin, J., in *Farrer* v. *State*, 2 Ohio St. 54, at page 56.

Unquestionably, the gift of the sponge played no part whatsoever in the deliberations of the jury on the issues. As one juror testified, it "was really something that was out of the case." No improper motive is indicated. No jury "tampering" is claimed. The theory of the defendant that the sponge "was the symbolic manifestation of * * * [one juror's] then fixed opinion" against him is no more supportable by the entire record than a conjecture that it represented a sardonic rebuttal to the prosecution's presuming to tread on the intelligence of the jury by its repeated references to the same illustration. Tokens of consolation are as often given to the vanquished as trophies to the victor.

No exact precedent can be found for the situation here presented nor is a definitive rule probable. But, we are persuaded that the act of this jury was no more one from which prejudice would naturally be inferred than that of a juror's written castigation, after a conviction, of one of defendant's witnesses for his attempts to procure, as disclosed by the testimony, other character witnesses for the defendant. *Nicely* v. *United States*, 129 F. 2d 357.

Section 2945.83, Revised Code, commands that no judgment of conviction shall be reversed for any cause (other than as specified therein) "unless it appears affirmatively from the record that the accused was prejudiced thereby or was prevented from having a fair trial." The record here fails to satisfy this requirement.

Finally, defendant urges that the verdict is against the manifest weight of the evidence. This court is not required to, and ordinarily will not, weigh evidence. *State* v. *Stewart*, 176 Ohio St. 156. That is one of the functions of the Court of Appeals. Since the defendant urged the same contention before that court, which found that "the record discloses ample evidence to support the verdict of the jury and the judgment rendered thereon," we may presume that it did in fact weigh the evidence. Our review of the record persuades us to concur expressly in that finding. Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

ZIMMERMAN, MATTHIAS, O'NEILL, HERBERT and BROWN, JJ., concur.